Thank you. Good morning. Brian Walter appearing on behalf of the City of San Gabriel. May it please the court. The motion for summary judgment in this case, or motions for summary judgment, we believe that the district court's ruling was correct in almost all respects except for the I guess, health care, the cash payments that are made to employees who opt out of receiving health insurance should be included in their regular rate of pay for overtime purposes. And we believe that that was an error by the court to rule that that amount should be included in the regular rate of pay because that amount is not compensation for specific hours of work or for specific services performed. And therefore, it falls squarely within the exclusion or the list that is set forth in the FLSA in Section 207, Subdivision E-2. What was it for? What was the payment? Yeah. The payment was for employees who, employees were provided with a certain amount of money for their employee benefits and they were required to purchase health insurance. Unless they had health insurance from an alternative source. So in this situation, employees who already had health insurance through a spouse, most likely, but could show proof of health insurance from another source, were given the money the city would have contributed to the health insurer as a payment. Was the value of the health insurance considered as taxable to the employees? Yes, it was. But in our view, the fact that it was taxable, there are certain types of expense payments, for example, that are considered taxable to employees but are not included in the regular rate of pay. If they hadn't taken the money, was the value of the benefit taxable? No, it was not. In our view, now plaintiffs, I think, have a different perspective on that, but the city was not treating any of the benefits that were actually elected as taxable. How was it reporting to the tax agencies, the Franchise Tax Board and the IRS, this money? I'm sorry? How was it reporting to the IRS and the Franchise Tax Board this payment in lieu of health benefits? Compensation? Yes, it was reported as compensation. And the fact that it was reported as compensation, though, again, we don't believe that that mandates that it has to go into the regular rate of pay. And in particular, the section 2072 excludes payments, any type of payment that is not made for specific hours of employment. And there are several cases that support that position. The right, we saw these in a brief, the right case in which there were, in that case, the court found that certain types of earned salary credits did go into the regular rate because those particular types of payments were essentially bad shift pay. Is that your leading case, the right case? Well, I think actually the local, the MENISA and the local 246 cases, and the Feet Cent case as well, and Ballaras, all of those cases we think support our position. The MENISA case held that a signing bonus, it's a third circuit case holding that a signing bonus is not related to the hours of employment. And we think that case is more similar to the facts here because the employees in this case received their, the cash in lieu for opting out of health insurance, regardless of how much they worked, what position they worked, what type of work they did. It's not the same thing as a night shift differential, some type of premium for working a particular type of position. It really, it has nothing to do with their actual assignment and their actual hours of work. It's more of the type of benefit that employers provide to employees that's part of the job. There are other benefits like, for example, paying for employee parking, paying for an employee's uniform, and paying for different types of benefits. And in this case, it would operate to the employee's detriment to, for the court to rule that this cash in lieu should be included in the regular rate because the employer doesn't have to give this money back to employees. And it could take the position that employees who have, who select health insurance will get employer provided health insurance. Employees who don't will not get it. A lot of employers do that, right? They could, yes. I mean, that would be an incentive, though, if that amount was included, was ruled to be included. But you don't suggest that you're freed from complying with federal law on the principle that no good deed goes unpunished. I mean, I understand the city's feeling in that regard, but you still got to comply with federal law, no matter how generous you choose to be. We're not disputing that you have to comply with federal law, but I do think from a policy standpoint, saying that that amount should be included in regular rate. It's consistent with the statutory framework, which is, which the language specifically says, other similar payments that are not intended as compensation for hours worked. But there's an antecedent principle or canon, right? And that's the plain reading, plain language canon of the law and the regulations here. And you have a burden to prove clearly and convincingly the application of an exclusion or exemption, don't you? Well, I would disagree that the language that this is an exemption, this is it's the language in 207 is a definition of what goes into and what does not go into regular rate. I know there's a line of case law under FLSA that says exemptions are narrowly construed. I, I don't think that refers to this type of issue. An exemption. Definitional, the definition, which you don't think you have a burden on that. Well, no, we have a burden to show that that this payment is, does not go into the regular rate. I would agree that that the city does, does have to meet that burden. But I think when you look at the, you mentioned the plain language of the statute. And when you look at the plain language of the statute and particularly the section we believe that applies is E2 of section 207, it lists three different types of payments that are excluded from regular rate. And it mentions vacation or other periods when no work is performed. It mentions expenses. And then it has a third category, which is the one that we believe this payment falls under for other similar payments that are not compensation for hours of employment. And I think one of the reasons that Congress included that language there is because in so many different types of job, there are, there are these different types of payments that you know, every company has, has sort of different forms of payments. And they couldn't list every type of payment in the statute. And in fact, in 1937, when this was drafted and it went into effect in 1938, there was no, the cash, cash in lieu of health insurance was a foreign concept at that point. It's become much more prevalent in recent years as you have families that have multiple wage earners and who don't, who end up not needing necessarily health insurance. But the health insurance is that type of payment, like an expense. Like some other type of payment that is not specifically for hours worked or, or particular shifts worked. I think the Feet Cent case also addressed that. That was a case where some of the payments were found to go into the regular rate of pay and some were not. And in particular, in that case, the medical claim bonus was excluded from the regular rate of pay because it wasn't tied to specific hours of work or hours of service. Let's assume for, for just a second that we don't agree with you. I have a problem with the district court's conclusion that your side showed good faith in making this determination because I don't see anything that suggests that your, your side did make this determination. I mean, you've got to show good faith and reasonable grounds to believe. And what I'd like to know is what did you do? What did the city do to make the, make the determination that you're trying to get us to buy into today? Well, what the city did in regards to good faith was when it first offered this benefit in 1993, it, it looked at the benefit and it determined that, that this was in fact a benefit. It wasn't a premium for hours worked and it, it therefore decided it doesn't go into the regular rate of pay. Where does the record show that, that you actually looked into this and made a determination? The, it, it is in the undisputed facts that the city, the city looked at the specific payment. What does looked at mean? The, the, the city, when, when this benefit was offered first in 1993, the city decided, the city decided. What did the city do though? It seems to me that the city just sort of knee jerked into the whole thing and said, whoops, benefit doesn't go into it, didn't look into it. It seems that the cases require some kind of affirmative action on your part in order to, to be able to support this. You've got to show that you actually endeavored to ensure compliance. And I'm not seeing anything that suggests that. Well, I, I, I think if you're, are you a city attorney? Does the city of, does the city of San Gabriel have a city attorney? Yes, it does. Did they turn to the city attorney for an opinion on something like this? No, they did not, to my knowledge. Why not? I mean, wouldn't that be something that ought to be done in a situation like this where cash is going to employees? And that, that triggers this idea of how to calculate the overtime rate. And I mean, it seems that, it seems that your side, I'm not criticizing you, but it seems that your side did nothing. Well, I, I, I think in response to your question, there's, at, at the city of San Gabriel and other cities, there's dozens of different payments that go to employees. It's not just one or two. So, I mean, and, and as a practical matter, employers don't go to their legal counsel and ask every single type of benefit or payment, whether or not that's included. Aren't they supposed to under the FLSA in order to get some, to show some kind of good faith? You got to show that you acted in good faith and you had a reasonable grounds to believe. And I'm not finding anything that suggests that you had a reasonable ground to believe that this was correct. You just automatically jumped from a label to a conclusion. Well, if you're suggesting you have to ask your legal counsel for an opinion under FLSA, I don't believe good faith. I'm asking you, but you didn't. So what, who did you ask? What did you do? I mean, who is the person who made the decision that this is the way it ought to go? You simply say the city looked at it. I mean, that to me, that leaves me in the dark. Well, it was a human resources official. A human resources official? Yes. A lawyer? No. Is this the deposition testimony that's in the record you're referring to? Yes, it is. Okay. So aside from that deposition testimony, is there anything else to get to Judge Trott's question showing that the city of San Gabriel actively endeavored to get an answer to this question? To this specific question, other than that, no. So doesn't that suggest that you don't have any ground to stand on? I mean, it's the city's burden to establish good faith, and it seems that there's nothing to support it. Well, I would disagree that the, I guess it depends on to what extent the court believes that the lengths the city had to go to. But in this situation, the city adds a benefit, an HR, human resources person looks at the benefit, decides it's a, looks at this amount, decides it's a benefit, not a premium payment, would not go into regular rate. She also provided testimony that throughout the years they received regular updates on the law and from various publications that they would follow. And there was never any indication in any of those documents that this type of specific payment should be included in regular rate of pay. Do you have any authority, analogous authority that would show those types of actions were in fact meets the actively endeavoring standard? Not specifically, but I mean, the good faith, it requires a subjective and an objective component here. And from an objective standpoint, also, I'd point out that there simply are there's not a single case on this issue. Right. But it seems to me that you're that we're kind of conflating two things. There's there's good faith and there's willfulness. Now, I agree. And my question for the other side is going to be on willfulness. What you've described to me shows no willfulness because no one ever told them what they did was wrong. But for good faith, as the case law defines it, it has to be the actually reach out and say, this is what we're doing. Does this does this sound OK? And I guess what you're saying is that that as far as you know, that didn't happen. They didn't hear any bad news. No one told them anything was wrong, but you can't point to where they actually reached out to someone in the Department of Labor or reached out to the city attorney or someone not very knowledgeable like yourself on this question. That's the way you describe the facts is is correct. I would dispute that that employer actually has has to go to those links to establish the subjective and objective elements. To what length does an employer have to go to show that it actively endeavored to do this? I mean, general good faith isn't isn't enough. Lack of bad faith isn't enough. General good faith isn't enough. There has to be something more than that, according to Alvarez and the other cases. Isn't that right? Yes, that's that's correct. They talk about there has to be the employer has to believe they're in compliance and that belief has to be reasonable. And in this situation, the employers. It seems to me that nobody had any belief at all about anything. I mean, it just happened. Well, I think that's glossing over it a little bit. The the human resources person whose job was to determine, look at each payroll item as it came in and figure out, is this something we include in regular rate or not? Decided that it was a benefit. And he was that who was that human resources person? I believe the deposition testimony in that came from Miss Tang and Miss Ospina. And they were the human resources persons. Yes. And did they explain what they knew, understood about all of this? Not resources. Are those payroll people? They they have a payroll component to their job. Yes. It seems that it just jumped from human resources to another another part of the operation. No city. San Gabriel is a small city. So the human resources personnel have have payroll function. And they don't that there's some coordination there between different employees to to get the paychecks out each week and determine how payments are characterized. Is this is this properly decided on summary judgment? Well, the facts weren't really in dispute at the trial court level. I mean, I think from both sides there, they're really in there. And in regards to this issue, plaintiffs didn't offer a disputed issue of fact that would require a trial. So I'd like to reserve four minutes of time. Very well. Thank you. 403. Good morning. May it please the court. Joseph Bullender for the appellees and cross appellants. As it pertains to the city's appeal. We believe the district court got it right that the cash in lieu of benefit payments cannot be excluded from the regular rate. Briefly, as it relates, there is a cross appeal here. As it relates to the cross appeal, we believe the judgment should be reversed. The the and specific to the cross appeal, obviously subject to the court's questions. I'd like to address the determination that this was a bona fide plan. In addition to the liquidated damages and will finish issues that the court was addressing. But I'll start with the appeal. I believe I think that's the easiest place to start. The district court evaluated the cash in lieu of benefit payments under sections 207 E2 and 207 E4. And I'll address both 207 E4 briefly. I think it's a it's a more straightforward question, at least. But I think it's important to keep in mind the principle that Judge Davis spoke of. Which is that these exemptions are very narrowly construed against employers trying to assert them. And that's an important premise to keep in mind. 70 of the statute starts from the default that all remuneration for services is included. And then we work down to other than these very seven or eight very narrowly construed exemptions to that. And as it pertains to 207 E4. And frankly, I think this is really a 207 E4 case. And it goes to some of the discussion about why the city chose initially to exclude these benefits. They termed them to be a benefit. It comes from the benefit plan. And therefore they're excludable like some benefits under 207 E4. The problem with that is that 207 E4 very explicitly in the plain language of the statute. Only allows for the exclusion of payments or contributions made to a trustee or third person. There is no it is undisputed in this case that that was not so here. So that takes us into 207 E2. And I think frankly that was a default position for the city once the litigation began. And I think the district court got it right. These are not other similar payments within the meaning of section 207 E2. This court enunciated in Local 246 that what really matters is, is this compensation for work? Is it compensation for services? And clearly it is. It is from a common sense perspective that health benefits are part of an employee's compensation package. They're not just given to persons not employed by the city. If a person ceased to be employed by the city, their health benefits would stop. So any cash payment, you know, subject to COBRA or things like that. But, I mean, any cash payment made in lieu of those benefits for an employee who chooses to opt out. There's no explanation for why that also wouldn't be compensation for services. Are those taxable, those benefits, health benefits? The... No. Health benefits themselves. Honestly, I don't know the tax treatment of health benefits. You don't know? Of these health benefits or the health benefits generally? My understanding is they would not be. Sounds like you're arguing that they should be taxable. They're compensation for work. Well, it's part of the... Is that right? Well, I think it's compensation in the sense that it's in exchange for the employee's services. It's part of the overall compensation package. The IRS might... That depends what is, is. The IRS may treat them differently based on policy considerations, but I don't think there's anything detaching the value received, the value of those benefits from an employee's compensation. And the issue, you know, with... What's the other side's argument? The other side's argument is that 207E2, that these payments are not related to specific hours of employment. Isn't that right? It is right that they're not related to specific hours of employment, but it's not right that they're not related... They're not compensation for hours of work. As I stated, this court in Local 246 told us that it doesn't matter that we're talking about a regular hourly wage or weekly wage. What matters is, is this compensation for services? And these clearly are. They're part of the city's flexible compensation, salary, and benefits manual. As I stated, the cash payments themselves come in the form of taxable wages on employee paychecks, Medicare withholdings, subject to garnishment if there is any, treated no differently than any other wage by the city. And I think what's important to go to, I think, Judge Strott's question, one thing to keep in mind is the value of health benefits, assume there are no cash-in-lieu payments, but for Section 207E4, those would not be excluded under Section 207E2. Meaning, if Congress had envisioned 207E2 applying so broadly that it would eliminate any payment that's not directly related to the... productivity, then there would be no need for 207E4. Are you arguing that the entire value of the health benefits ought to be included in the calculation of overtime rate, not just the cash-in-lieu of payments? Yes. And that's... I'm sorry. Health benefits, the entire value gets calculated into it. Yes. And that's the cross-appeal. That's the cross-appeal. Right. So, you know, we're talking about compensation for services. And I think my colleague was inserting that word specific. You know, these aren't related to specific hours. It's not, you know, specific services. But that's not in the statute. And I would also submit that we're also too broadly construing the other similar payments language. I think the district court got it right. And if you look at the Meneza dissent, it also addresses this issue. And the Department of Labor, in its regulations, additionally takes this position that... I'm sorry. Was your answer to Judge Trott that you believe not just the cash portions, but the non-cash portions of dental and vision benefits should be included in compensation? Yes. Correct. Yes. I didn't understand that to be your contention. Well, that's the cross-appeal. And what that relates to is Section 207E4 allows for the exclusion of benefit contributions made on behalf of an employee so long as they're made pursuant to a bona fide plan. Oh, that's your... Okay. Okay. Okay. I see. I see. Bona fide plan. So, and I'll get there quickly, unless the court would like to... No, no. I understand. I understand. But... Think about it a different way. No problem. No problem. So, in this clause, that's not just other similar payments generally. It's related to the other similar payments, the two other categories identified in 207E2, which are payments for periodic periods of time in which no work is performed, like vacation, like sick leave, something like that, or reimbursements. And this is neither. This is neither. And I'd like to point out, too, the argument's been made by the city that cash-in-lieu payments are somewhat analogous to the vacation buyback line of cases, like Chavez out of the Tenth Circuit, under this idea that it's really this buyback of an unused benefit. And first, I'd like to say that I don't think, practically, that's not really how this works, not really a buyback. The employee at open enrollment or the beginning of the year goes to HR and says, I have proof of alternative insurance. He's making an election forward-going that says, he will now receive taxable wages in lieu of benefits for the rest of the year. Or the employee can say, well, I'm just an employee plus one, as opposed to plus two, so he'll get a smaller portion, depending on the value. So it's not correct to say that it's a buyback in the sense that they accumulate credits or something, and at the end of the year, whatever you haven't put towards health benefits, it's paid back to you. Well, there may be a lot of different kinds of buybacks. It sounds awfully like a buyback to me. I think it's similar, but it's forward-looking as opposed to an accumulation of benefits. Does that make a difference? Is that a distinction? Factually, it is. I was going to say, I don't think that matters on the law. Because the issue is, Chavez and those cases didn't say any buyback of an unused benefit is no longer subject to the regular rate. They premised their rulings very centrally on the language of 2072, in that we're talking about vacation time, which is, by its very nature, pay for time spent not working, and it's specifically identified in the statute. Couldn't that be considered compensation under your argument? I think it's... You have a very broad view of compensation, so vacation time would seem to be part of it. Anything you get for working, including vacation. Well, I think that's where 2072 comes in, meaning 207E says that, all remuneration for services included. So we start from that premise. So unless you fall very specifically into a category of exclusion, then that applies. And the vacation buybacks under Chavez, those courts have identified that they believe they fall very specifically within that, the language of the statute. And I'll get to the cross-appeal here, but I want to round out just with this very brief hypothetical, and it's... Not that I'm posing to you, asking for an answer, but I think it illustrates, conceptually, the point here. An employer could create a compensation scheme like the following. $10 per hour for hourly work. In addition to, we will provide you lodging, and we value that lodging at $1,200 a month. But if you, as an employee, can show us that you have alternate lodging, we'll give you that $1,200 a month in taxable wages on your paycheck. And the money wouldn't vary based on the amount of work performed, or the quality of the work. It would just come in as a monthly lodging, cash in lieu of lodging, basically. There's no argument that would remove that payment from the regular rate calculation. It's clearly compensation for services. It doesn't need to fluctuate by the amount of services performed. And I'd point the court to 778.224. It discusses this notion that we don't need to be looking directly at a particular service or particular hours when we're doing this, when we're looking at whether or not payments are excluded under 7E2. So, unless the court has questions, I'll move to the cross-appeal, the bona fide plan argument. I would like you to speak a little bit about willfulness, so you can decide in your remaining seven minutes. Okay. I'll start there then. And it goes to the liquidated damages argument as well. With respect to... What we see as the issue here with respect to liquidated damages and the objective basis to believe that the conduct conformed with law is in addition to, I don't think there is evidence that the city took any really affirmative steps to determine what was right. But in addition to that, I think the district court got it wrong in looking at which provision he should be doing the willfulness or liquidated damages objective reasonableness analysis based off of. Well, I want to make sure we keep these distinct. Because there's good faith, which entitles you to liquidated damages. And then I understand it's the city's burden to prove this. But then there's also willfulness, which extends the statute of limitations. And that's your burden to prove, right? Correct, correct. And willfulness is different than good faith, correct? It is, it is. And the reason I'm addressing them together is because I think the issue is, and I think going to willfulness, it's this idea that reckless disregard also gets you to willfulness. And how do you get reckless disregard out of this case? I think at best you might get negligence. But how do you get reckless disregard out of this case on the evidence? The evidence suggests that... Reckless disregard. ...that at least as of 2003, because that's when Ms. Tang came to the city, and the evidence suggests, consistent with what counsel said, that a determination was made in whenever this benefit plan was started that these cash-in-lieu payments were not included in the regular rate because they're a benefit. And how is that reckless? Well, in our view, that's completely... Maybe it's wrong, but I don't see anything at all that suggests that it's reckless. We think it's completely inconsistent with the language of the statute. Does that make it reckless? Well, I think it becomes reckless when you look at the fact that once a determination is made, never revisit it over a period of at least 10 years. When did your clients realize it was, quote, wrong? The suit was filed in 2012. Nobody did. It just sort of floated. You know, reckless means more than just that it happened, or that it was negligent. And I want you to tell me why it was reckless. Disregard is one thing, okay, but that adjective means something. And what shows that it was reckless? I think that the failure to take any steps to ascertain... So it's omission, reckless by omission? Well, the statute doesn't require, or the case law, nor does the case law require intentional knowing. It requires more than negligence, general negligence. True, but I think... All you can say is they didn't do anything, and it was reckless not to have done anything. Is that your case? For the amount of time here, and given... Yes, and yes, but for the amount of time that there was no looking into this, and given that we believe how plainly against the statute it is. I think that factors in as well. So, and... And there were no legal cases that decided this issue? Not specifically, but I think the district... What strikes specifically, not period? Well, the case law on 207E2 within the Ninth Circuit, we believe has been settled, that we're talking about compensation for services, and to take the position that these are not includable in the regulate, these cash-in-lieu payments, is to somehow take the position that your benefits aren't part of the compensation package. What's the case that you want me to read before I make my final decision on this that supports what you just said? I'd say Local 246. 246? The same case law that we cited above. 246 is your leading case? Related to 207E2. Okay. But also, I think what's important on that point, Judge, is the exclusion here was not made by the city under 207E2. The evidence shows that they excluded it as this benefit, as a benefit plan. Without conferring with counsel. Right. For all we know, it was right down the hall. Correct. Yeah, there's no evidence of that. Why isn't it reckless disregard? If you had evidence that somebody in the office had a discussion about it, whether to ask for counsel's opinion and decided not to, would that be reckless? It would help. If there was an affirmative decision to... Today, I think we have that because they didn't, or there's no evidence that they did seek counsel's advice. What we know is, I asked the question, why did you exclude these? On what basis did you exclude these? We determined it was a benefit. Yeah, the label controlled. Right, and that was it. To me, that's 207E4. That completely violates the plain language of 207E4. If I may turn quickly we believe the district court wrongly concluded that, although willfulness and liquid damage is part of the cross appeal, but on the bona fide plan issue, we believe the district court wrongly disregarded the Department of Labor's sound agency interpretation of its own regulation, which is 778.215. The 20% rule is reasonable. It is consistent with previous interpretations of, again, the Department of Labor's own agency interpretation. But the court disregarded it. The court disregarded it on the grounds that... And what was it? I'm sorry, the 2003 Department of Labor opinion letter. Opinion letter. Correct. And is that entitled to Chevron-like deference or better? Not Chevron-like deference. What kind of deference, if any? Skidmore deference. However, I would say this is an agency interpretation of an agency's own regulation. The incidental thereto language, which is what essentially the 20 cent cap is there to say. 778.215 says you can make cash payments out of your benefit plan and it will remain a bona fide plan as long as those cash payments are nothing more than incidental part of the plan. The Department of Labor's opinion letter, the 20% cap, is what they created to determine whether or not it is an incidental. And so I think it is in that way required to some hour deference, AUER, R.V. Robbins, an agency interpretation of its own regulation, which is a higher standard. And if you're right and the plan is not bona fide, what consequence flows from that? The entire value of the health benefits go into the calculation of the overtime rate. Correct. Correct. Correct. I see my time is coming to an end. If the court has any questions. Thank you very much, counsel, for your argument. Thank you. Well, I wanted to address a couple of points that my colleague made. First of all, he referred to Section 778 as a regulation. It's not a regulation. It's an interpretive bulletin. It didn't go through formal rulemaking procedures. So it's not entitled to the same level of deference that a regulation would be entitled to. And as we noted in our briefs, this is an issue on which the Department of Labor has changed its opinion over time in regards to this 20% test. I also wanted to respond back to the earlier question as far as the city's evidence on good faith. And the relevant evidence would be in the excerpts of the record at 479 through 484. And that's the deposition testimony of Linda Tang. It's, I think, consistent with what we've already discussed as far as the evidence. Summarize that for me in a sentence or two in a good faith context. Well, the summary of the evidence is that Linda Tang, who is an accountant or works, has accounting duties, testified that when the benefit was first offered in 1993, that payroll and HR worked collaboratively to determine that that should be coded as a benefit. Was she part of that in 93? I don't believe she was. So we still don't know what happened in 93. Correct. Once it got the label on it, that was the end of the game. Well, I wouldn't say it was the end of the game. Once it got the label on it, there was no evidence from 1993 for 20-something years that caused the city to have any reason to think that was an incorrect label. What did Tang do then? Just look at it and say, well, that's a benefit. That's the end of the game as far as payroll is concerned? And payroll just took that designation as definitive. Payroll believed it was a benefit and it didn't go into regular rate. Where's the good faith? I mean, there's a lack of bad faith, but does that become good faith in this context? Well, I mean, that goes to, I guess, whether the interpretation of 29 U.S.C. 260 is that an employer actually has to go out and seek legal opinions as to... Did anybody even do anything? Did they even look at it? Look at it from an FLSA standpoint? Yeah. There's no evidence of that. But, again, I mean, the employers are dealing... Any employer deals with a lot of different payroll issues on a regular basis. And an excuse? Well, it's... I think it's reasonable for an employer to have HR staff and account and payroll staff that are trained in these issues. Were they trained in FLSA issues and how to make these determinations? Or is this just... It doesn't say that in the record. It doesn't specifically say that in the record? No. Strike specific. It doesn't say it at all. Correct. And... But I... For an employer to... People who were making the determination weren't qualified to make the determination. They saw benefit. That was the end of it. I think that... Well, I wouldn't agree with that. They weren't qualified. I think, again, an employer has to delegate some of these duties to their HR and their accounting staff. I mean, they can't run every single payroll issue by themselves. The accounting staff is qualified to make legal determinations on FLSA matters. It seems to me that that's the kind of thing you'd bounce to a city attorney or something. I... An employer doesn't run every payroll decision by its attorney. That's just not practical. Well, that shows a lack of good faith, though, doesn't it? I don't think so. Good faith requires something more than just sitting on your hands. Well, but a good... A conscious decision was made was an evaluation. Is this a benefit or is this something that goes into the overtime rate? A conscious decision was made. There's no subject there. That's a passive voice. Who made the decision and on what? I mean, I'm beating a horse here now. It's not quite dead, but I'm continuing to beat it. It's close. Well, all right. Let's shift over to willful. You know, you're accused of reckless disregard. Your answer, if any? Oh, well, I'd go back to what I just said first and point out that from 1993 until now, there's not been a single case saying what the city has done, saying that this type of benefit has to be included in regular rate. There's no evidence that you asked opposing counsel. There's no evidence that anyone ever complained about that. There is evidence in the record that the city had regular labor negotiations with the police officers who had an attorney and this was never raised. And the fact that for there to be reckless disregard, there would have to be some further evidence that there was some reason the city should have known it was not in compliance. Does that mean that the first time a court settles a question under an exemption or an exclusion, there's a lack of willfulness as a matter of law? No, I wouldn't go that far. So how far do you go? Because what you just said essentially is there's no case law. This is a case of first impression. So we couldn't have possibly acted willfully because nobody knew the answer. Well, and if that was the only I guess set of facts, I would agree that that under the McLaughlin Supreme Court case when it's talking about there has to be some evidence, some type of conduct by the employer that indicates a disregard for the law. If nobody knows what the law is on that point... Well, the Alvarez case seems to suggest under the category of willful behavior that an employer has to take some kind of affirmative action to ensure compliance with the act. What was the affirmative action here showing compliance with the act? Well, I wouldn't agree with that reading of Alvarez. I think that's a little bit broader than what Alvarez says and what the employer did here... I mean, we've gone over this. Right. What do you think Alvarez says then? Maybe I'm misreading it. That there would have to be some further step and going back to McLaughlin, the Supreme Court case... McLaughlin says, you know, merely negligent conduct won't work, but Alvarez seemed to say there has to be something affirmative. Well... Some kind of a step to ensure compliance. To say that there had to be some sort of step to investigate FLSA compliance... I'm sorry, I interrupted you. What does Alvarez hold in your view? Alvarez holds that in order to have good faith, the employer has to have a subjective... I think the Alvarez case really focuses on subjective belief of the employer that it's in compliance. I mean... With respect to good faith? I'm sorry? More with respect to good faith than willfulness? Yes. And in particular in regards to the McLaughlin case, I mean, it talks about the fact that an employer just knowing that there's a possibility... that the FLSA exists is not enough to impute liability to an employer for violating it. And that's essentially, I think, what would be the case here if there was a finding of willfulness where the city never had any indication from anyone internally, externally, that there was any violation of the law. And when the city looked at this issue, you can... you can agree or disagree with whether the HR staff should have done more and the payroll staff should have done more, but they didn't have any reason to think that they were actually in violation of the FLSA. All right. Thank you very much, counsel. Thank you. This case is now
judges: Trott, Owens, Davis